IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**MARRYSSA M. MIDDLETON (02),**

    Defendant.

Case No. 15-40018-02-DDC

**MEMORANDUM AND ORDER**

This matter comes before the court on pro se[1] prisoner Marryssa Middleton's Motion for Release under 18 U.S.C. § 3582 (Doc. 279).[2]  Ms. Middleton seeks compassionate release due to the COVID-19 pandemic.  *Id.* at 1–2.  Ms. Middleton also has supplemented her motion with additional materials.  Docs. 284, 285, 287, & 288.  The government has responded.  Doc. 286. For the reasons explained below, the court denies Ms. Middleton's motion.

**I.    Background**

In February 2016, a grand jury returned a single count Superseding Indictment charging Ms. Middleton and others with kidnapping resulting in death.  Doc. 64 at 1–2.  This charge, if proved beyond a reasonable doubt, would violate 18 U.S.C. §§ 1201(a)(2) and 2.  *Id.* at 2.  In

---

[1] Because Ms. Middleton proceeds pro se, the court construes her filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court does not assume the role of advocate for a pro se litigant.  *Id.*

[2] Ms. Middleton currently is represented by counsel.  "The Supreme Court has recognized a constitutional right to self-representation, but not to simultaneous self-representation and representation by counsel (known as hybrid representation)."  *United States v. Couch*, 758 F. App'x 654, 656 (10th Cir. 2018).  Although there is no constitutional right to hybrid representation, the court has discretion to allow it.  *Id.*; *United States v. Treff*, 924 F.2d 975, 979 n.6 (10th Cir. 1991) ("The decision to allow hybrid representation and to limit the defendant's participation in such representation is within the discretion of the trial court.").  Exercising its discretion, the court elects to accept Ms. Middleton's pro se motion in this instance and allow hybrid representation for purposes of this motion only.

November 2016, the government filed a Superseding Information, charging Ms. Middleton with one count of conspiracy to commit kidnapping resulting in death. Doc. 141 at 1. Ms. Middleton entered a plea agreement with the government. Docs. 144 & 145. She pleaded guilty to the conspiracy to commit kidnapping charge. Doc. 144 at 1–2. The Presentence Investigation Report ("PSR") calculated a total offense level of 40 and a criminal history category of III, producing a Guidelines sentencing range of 360 months to life imprisonment. Doc. 178 at 30 (PSR ¶ 156). On May 18, 2017, the court sentenced Ms. Middleton to 336 months' imprisonment, followed by five years of supervised release. Doc. 189 at 2–3 (Judgment). This 336-month custody sentence represented about a 7% reduction below the bottom rung of the Guidelines range.

Ms. Middleton asserts that she currently is incarcerated at Federal Medical Center, Carswell, in Texas. Doc. 279 at 1. She asserts that she has numerous medical conditions and currently has COVID-19. Doc. 279-2 at 1–6; Doc. 287 at 1.

**II.     Legal Standard**

Binding authority from our Circuit establishes that a "'district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'" *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)). Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a term of imprisonment but only if certain exceptions apply. For many years, these exceptions required the Bureau of Prisons ("BOP") to bring a motion on a defendant's behalf. But in 2018, the First Step Act modified the compassionate release statute, and authorized a defendant to file her own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat.

5194 (2018). This amendment authorized an inmate to make such a motion, but only after she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Ms. Middleton makes no explicit exhaustion argument. The government concedes that Ms. Middleton has exhausted her administrative remedies because more than 30 days have elapsed since she filed a request with her warden. Doc. 286 at 7; Doc. 286-1 (Warden's Mem. denying Ms. Middleton's request for reduced sentence because of COVID-19).

In *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule, not a jurisdictional bar. *Id.* at 832–34. Although claim-processing rules don't implicate the court's subject matter jurisdiction, the court must enforce them when properly invoked. *Id.* at 833. But, if not invoked, claim-processing rules are subject to waiver and forfeiture. *Id.* at 834; *see also United States v. Spaulding*, 802 F.3d 1110, 1130–34 (10th Cir. 2015) (Gorsuch, J., dissenting) (explaining why "§ 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule").

The Tenth Circuit hasn't yet decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. So, the court must predict how our Circuit would decide the question. The court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit would adopt its reasoning. Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

Because Ms. Middleton waited 30 days after asking her warden to file a motion in federal court, she has satisfied the exhaustion requirement of § 3582(c)(1)(A). And, even if she hasn't,

the government explicitly has waived any objections to the exhaustion requirement. So, the court turns to the substance of her motion.

### III. Discussion

#### A. The court exercises its discretion when deciding whether "extraordinary and compelling" reasons exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2) "[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). *Id.* § 1B1.13 application notes 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify her for compassionate release, if (i) she is suffering from a terminal illness, or (ii) she is suffering from a serious physical or medical condition that "substantially diminishes" her ability to provide self-care within the prison and she is not expected to recover. *Id.* § 1B1.13 application notes 1(A). Subdivisions (B) and (C) apply to age and family circumstances not invoked here. Subdivision (D) supplies a "catchall" provision: it applies when "[a]s determined

4

by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 application notes 1(D).

Ms. Middleton plainly does not qualify under two of the four subdivisions in Note 1. She is not 65 years old (Subdivision (B)) and nothing suggests that the "family circumstances" addressed in Subdivision (C) apply. She also does not qualify under either of the two prongs described in Subdivision (A). Nothing suggests Ms. Middleton "is suffering from a terminal illness"—prong (i)—or, as prong (ii) requires, that she has contracted a "serious physical or medical condition" and she "is not expected to recover from" it.[3] § 1B1.13 application notes 1(A).

This leaves Subdivision (D). The guidance in this subsection advises that § 1B1.13 applies when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.[4]

A few courts have ruled that only the BOP may invoke the "catchall" provision of subdivision (D). *United States v. Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy

---

[3] Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process." § 1B1.13 application notes (1)(A)(ii). Ms. Middleton's motion does not invoke these alternatives.

[4] As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018). The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language used in this provision still requires a motion by the BOP. *See Jackson*, 2020 WL 2812764, at *3. But the First Step Act obviated this requirement.

5

> statement; and the policy statement does not presently provide for a court determination of other reasons.

*United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020) (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)). But an "overwhelming majority of courts" have rejected this approach. *Id.* Instead, they have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute." *Id.* (citations omitted). In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not limited to circumstances set forth in subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence—and may do so under the 'catch all' provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting relief).

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling" reasons warrant compassionate release.

### B. Ms. Middleton has not established that "extraordinary and compelling reasons" warrant compassionate release.

Ms. Middleton contends she currently is "suffering from a number of major illnesses which makes her at risk (high risk) for COVID-19." Doc. 279 at 1. As best as the court can discern, Ms. Middleton contends she has "chronic asthma," various ear, nose, and throat complaints related to her "laryngeal papillomatosis," "adenotonsillar hypertrophy," "panic attacks" or "seizures," "right hip and leg problems," scoliosis, weakness in her neck, and occasionally loss of feeling in her feet. *See generally* Doc. 279-1; Doc. 279-2; Doc. 284; Doc. 285. Ms. Middleton also updated her motion to report she recently has contracted COVID-19. Doc. 287 at 1. She reports she has "been in isolation" since July 8, 2020, and was "real[,] real sick for 3 days." *Id.* At bottom, Ms. Middleton seeks release because she believes she isn't receiving proper medical care and she is "scared" about COVID-19's effect on her "breathing, throat problems[,] and medical conditions." Doc. 279-2 at 5.

The government concedes that only Ms. Middleton's asthma condition "qualifies as an extraordinary and compelling circumstance for this [c]ourt's consideration of a sentence reduction." Doc. 286 at 15. But, the government argues, Ms. Middleton's medical condition doesn't "outweigh the gravity of her crime and the need for continued incarceration." *Id.* at 17.

To be sure, it is regrettable that Ms. Middleton is incarcerated during this pandemic. It is also regrettable that she has contracted COVID-19 and has an asthma condition. But the court isn't convinced that the combination of those two conditions qualifies her for release after she has served about one fourth of her 28-year sentence for her participation in a conspiracy that cost a human being her life. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable"—the rubric § 3582(c)(1)(A) instructs

7

the court to follow.  Four of those statutory sentencing factors are particularly germane here.  The next four paragraphs discuss them.

### 1.  Nature and Circumstances of the Offense

The following facts come from the PSR, which Ms. Middleton did not object to in any respect.  Doc. 178 at 34 (PSR ¶ 184).

On February 7, 2014, Ms. Middleton, along with others, confined the victim—a prostitute identified as A.C.—in a car and removed her from a residence on the Fort Riley military base against her will.  Doc. 178 at 5, 6 (PSR ¶¶ 11, 21).  The group executed this plan because of a posting on social media.  *Id.* at 7 (PSR ¶ 22).  Based on the posting, Ms. Middleton believed her boyfriend—Larry Anderson, who also was A.C.'s pimp—was having a sexual relationship with A.C.  *Id.*  To resolve this dispute, Mr. Anderson and Ms. Middleton conceived of a plan: they would arrange a "ruse" prostitution encounter with A.C. so Ms. Middleton could "'fight out the problem'" with A.C. and Mr. Anderson could collect money that A.C. purportedly owed him.  *Id.*  (PSR ¶¶ 22–23).  The couple enlisted help from several friends.  *Id.* (PSR ¶ 22).

At the staged prostitution encounter, Ms. Middleton attacked A.C. and demanded she pay the money she owed to Mr. Anderson—about $300.  *Id.* at 7–8 (PSR ¶¶ 24–25).  A.C. said she had money where she was staying, but after the group relocated to her hotel room, A.C. confessed she had no money.  *Id.* at 8 (PSR ¶ 26).  The group later moved again to a house at the Fort Riley military base, taking A.C. with them.  *Id.* (PSR ¶ 28).

After an unsuccessful attempt to arrange another prostitution encounter for A.C. so she could raise the funds Mr. Anderson and Ms. Middleton had demanded, the group eventually transported A.C. away from Fort Riley to a remote location on a bridge in rural countryside in a neighboring county.  *Id.* at 8–9 (PSR ¶¶ 28, 32–33).  At the bridge, Ms. Middleton removed A.C.

from the car and attacked her again. *Id.* at 9 (PSR ¶ 33). Ms. Middleton threatened A.C. with a knife and repeatedly tried to cut A.C.'s throat. *Id.* A.C. tried to escape and jumped off the bridge, breaking her ankle in the process. *Id.* (PSR ¶ 34). But Mr. Anderson and Ms. Middleton pursued her. *Id.* Under the bridge, Ms. Middleton unsuccessfully tried to cut A.C.'s throat again. *Id.* Mr. Anderson took the knife and inflicted the fatal blow. *Id.* A.C. died at the scene. *Id.*

Ms. Middleton, Mr. Anderson, and the rest of the group hid at a house on Fort Riley property, and tried to destroy all evidence linking them to A.C's death. *Id.* at 10 (PSR ¶ 36). One member of the group lied to police about Mr. Anderson's whereabouts. *Id.* (PSR ¶ 37). Eventually, law enforcement executed search warrants and interviewed witnesses. *Id.* (PSR ¶ 38). Five days after her death, law enforcement found A.C.'s body—and the knife—where Ms. Middleton and Mr. Anderson had left them. *Id.* (PSR ¶ 39). To conclude with the obvious, Ms. Middleton committed a heinous, violent, and utterly senseless felony offense.

### 2. History and Characteristics of the Defendant

Although this is Ms. Middleton's first federal conviction, it is not Ms. Middleton's first experience with the justice system. In 2009, Ms. Middleton was convicted of theft and driving under the influence in Colorado. *Id.* at 24 (PSR ¶¶ 116–117). Two years later, she was convicted on two more charges in Colorado: an underage possession of alcohol charge and again on a driving under the influence charge. *Id.* at 25 (PSR ¶¶ 118–119). The next year, Ms. Middleton was convicted on theft and identity theft charges in Colorado. *Id.* (PSR ¶ 120). These offenses produced a criminal history of score of four points for a category III classification. *Id.* at 26 (PSR ¶ 26).

9

### 3. The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Ms. Middleton, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary." 18 U.S.C. § 3553(a). Ms. Middleton received a significant but, in context, appropriate sentence. Reducing that sentence by more than 75% would produce a sentence that no longer reflects the seriousness of Ms. Middleton's criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment.

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Reducing Ms. Middleton's sentence to the 77 months she has served so far would reduce it well below the applicable Guidelines range. No new circumstance justifies such a substantial disparity.[5]

### C. Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Ms. Middleton's motion seeks. Indeed, the only thing that favors her request is the fact that she regrettably suffers an asthma condition. The court recognizes that this condition—at least in theory—has the potential to increase the severity of the sentence beyond the 336 months already imposed. *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally

---

[5] The court is mindful of the other factors identified by § 3553(a). They are not pertinent, however, to the current motion.

anticipated . . . ."). But it has not increased its severity to the point where a 77-month custody sentence is sufficient.

Ms. Middleton has served barely a fraction of her sentence for an extraordinary and senseless violent crime. The court is not prepared to accept that Ms. Middleton's asthma condition provides sufficient reason for her release under § 3582(c)(1)(A). The court thus denies Ms. Middleton's Motion for Release under 18 U.S.C. § 3582 (Doc. 279).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Ms. Middleton's Motion for Release under 18 U.S.C. § 3582 (Doc. 279) is denied

**IT IS SO ORDERED.**

**Dated this 29th day of July, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
