IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**MARRYSSA M. MIDDLETON (02),**<br><br>　　　　**Defendant.** | Case No. 15-40018-02-DDC |

### MEMORANDUM AND ORDER

This matter comes before the court on pro se[1] petitioner Marryssa Middleton's Motion for Compassionate Release (Doc. 319). Ms. Middleton seeks compassionate release because of the COVID-19 pandemic. The government filed a Response (Doc. 321), and Ms. Middleton filed a Reply (Doc. 322). For the reasons explained below, the court denies Ms. Middleton's motion.

**I.　Background**

In February 2016, a grand jury returned a single count Superseding Indictment charging Ms. Middleton and others with kidnapping resulting in death, violating 18 U.S.C. §§ 1201(a)(2) and 2. Doc. 64 at 1–2. In November 2016, the government filed a Superseding Information, charging Ms. Middleton with one count of conspiracy to commit kidnapping resulting in death, violating 18 U.S.C. § 1201(c). Doc. 141 at 1–2. Ms. Middleton entered a plea agreement with

---

[1]　"[P]risoners who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Hall*, 935 F.2d at 1110.

the government under Fed. R. Crim. P. 11(c)(1)(C). Docs. 144 & 145. She pleaded guilty to the conspiracy to commit kidnapping charge. Doc. 144 at 1–2. The Presentence Investigation Report ("PSR") calculated a total offense level of 40 and a criminal history category of III, producing a guideline sentencing range of 360 months to life imprisonment. Doc. 178 at 30 (PSR ¶ 156). On May 18, 2017, the court accepted the Plea Agreement and, consistent with Rule 11(c)(1)(C), imposed the jointly proposed 336 months in prison, followed by five years of supervised release. Doc. 189 at 2–3.

On May 13, 2020, the court dismissed Ms. Middleton's first Motion for Compassionate Release (Doc. 276) on jurisdictional grounds. Doc. 278. On July 29, 2020, the court denied Ms. Middleton's second Motion for Compassionate Release (Doc. 279). Doc. 289. On September 29, 2021, the Tenth Circuit affirmed this court's denial of Ms. Middleton's second motion for compassionate release. *United States v. Middleton*, No. 21-3093, 2021 WL 4453405 (10th Cir. Sept. 29, 2021).

On February 10, 2022, Ms. Middleton moved—for a third time—for compassionate release (Doc. 319). Ms. Middleton argues that her many medical conditions put her at risk of contracting severe COVID-19 and present "extraordinary and compelling reasons" to reduce her sentence. *Id*. at 2. Ms. Middleton has contracted COVID-19 twice. Doc. 319 at 3; Doc. 321 at 8. Today, Ms. Middleton's projected release date is May 18, 2038. Marryssa Middleton (Reg. No. 25077-031), https://www.bop.gov/inmateloc/ (last visited June 30, 2022).

## II.   Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [this] rule of finality is subject to a few narrow exceptions. One such exception is contained in [18 U.S.C.] § 3582(c)(1)." *United States v. Maumau*, 993 F.3d 821,

830 (10th Cir. 2021) (citation and internal quotation marks omitted).  This exception permits the court to modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days[2] from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A); *see also Maumau*, 993 F.3d at 830–31 (reviewing § 3582(c)(1)'s history, text, and requirements).  Our Circuit later held, the exhaustion requirement is a claim-processing rule that the government may waive or forfeit.  *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

Aside from this exhaustion requirement, the court applies a three-step analysis to the substance of compassionate release motions filed under § 3582(c)(1)(A).  *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).  The court may grant a motion for reduction of sentence only if "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable."  *Id*.  Relief may "be granted only if all three prerequisites are satisfied," and, accordingly, "the three steps [can] be considered in any order."  *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021).

The Tenth Circuit has held that it does not view the first step in § 3582(c)(1)(A)—"extraordinary and compelling" reasons—as jurisdictional.  *Hald*, 8 F.4th at 942 n. 7 (10th Cir. 2021) (declining "to read a jurisdictional element into § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication (much less a

---

[2] Under § 3582(c)(1)(A), a defendant may file a motion for compassionate release directly with the district court after "the passage of 30 days from the defendant's *unanswered* request to the warden for such relief."  *Maumau*, 993 F.3d at 830 (emphasis added).

'clear statement') to that effect."). The court need not consider the second step of the analysis because the Sentencing Commission has not issued an "applicable policy statement" for defendant-filed compassionate release motions like this one. *Maumau*, 993 F.3d at 837–38. So, "[u]nless and until the Sentencing Commission issues such a policy statement, the second requirement does not apply." *United States v. Quinn*, No. CR 10-20129-03-KHV, 2021 WL 3129600, at *2 (D. Kan. July 23, 2021).

### III. Analysis

The government does not contest that Ms. Middleton has complied with the exhaustion or lapse requirements of 18 U.S.C. § 3582(c)(1)(A). Doc. 321 at 4–5; *see also* Doc. 319-2 at 2. So, the court proceeds to analyze the merits of Ms. Middleton's motion. For reasons explained in more detail below, the court denies Ms. Middleton's motion for two independently sufficient reasons: (1) Ms. Middleton hasn't shown extraordinary and compelling reasons for her release, and (2) the § 3553(a) sentencing factors do not favor her release. The court explains both of these conclusions in parts A and B, below.

#### A. **Extraordinary and Compelling Reasons**

Ms. Middleton seeks compassionate release because she has contracted COVID-19 twice and contends she has "numerous medical issues that also place her in danger." Doc. 319 at 3. She contends these medical conditions "include but are not limited to [c]hronic asthma/[s]leep [a]pnea," various ear, nose, and throat complaints related to her "laryngeal papillomatosis," and "obstructive [a]den[o]tonsillar hypertrophy." *Id*. Also, Ms. Middleton complains of "60% hearing loss," "hip and back issues," "a herniated disc that is shifting and causing nerve damage on the right side of her body," and scoliosis. *Id.* at 4.

4

The government notes that Ms. Middleton's recent medical records confirm a positive test for COVID and that her symptoms were benign. Doc. 321 at 10. And the government argues that Ms. Middleton's health conditions do not present extraordinary and compelling circumstances because she is vaccinated against COVID-19, had little to no problems managing her positive COVID tests, and her general fears about COVID-19 are insufficient. *Id*. at 10–11. The government also notes that nothing has changed with Ms. Middleton's medical conditions such that the court should reverse its previous determination that compassionate release was not appropriate for health reasons. *Id*. at 10 (quoting *United States v. Middleton*, 475 F. Supp. 3d 1250, 1255 (D. Kan. 2020) ("[I]t is regrettable that Ms. Middleton is incarcerated during this pandemic. It is also regrettable that she has contracted COVID-19 and has an asthma condition. But the court isn't convinced that the combination of those two conditions qualifies her for release after she has served about one fourth of her 28-year sentence for her participation in a conspiracy that cost a human being her life.")).

Our Circuit recently held (albeit in an unpublished opinion) that "'a defendant's incarceration during the COVID-19 pandemic—when the defendant has had access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" *United States v. McRae*, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)); *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). And several district courts in our Circuit—including this one—have adhered to this direction from the Circuit. Following *McRae*, these courts have concluded that when a defendant has had access to the

COVID-19 vaccine, then incarceration (not even during a pandemic) can't suffice, on its own, as an extraordinary and compelling reason for a sentence reduction. *See United States v. Maynard*, No. 18-cr-00395-CMA, 2022 WL 2077951, at *2 (D. Colo. June 9, 2022); *United States v. Smith*, No. 2:13-cr-00776, 2022 WL 1422197, at *6 (D. Utah May 5, 2022); *United States v. Garcia-Patino*, No. 17-20038-18-DDC, 2022 WL 1223642, at *2 (D. Kan. Apr. 26, 2022); *United States v. Logan*, No. 07-20090-01-KHV, 2022 WL 1102654, at *3 (D. Kan. Apr. 13, 2022); *United States v. Oaks*, No. 18-cr-00470-PAB-11, 2022 WL 1081148, at *2 (D. Colo. Apr. 11, 2022); *United States v. Duran*, No. 1:15-CR-27 TS, 2022 WL 844433, at *1 n.3 (D. Utah Mar. 22, 2022).

The only change in Ms. Middleton's medical condition since the court denied her second motion for compassionate release on July 29, 2020, is that she contracted COVID-19 a second time. The record reflects that Ms. Middleton has received the COVID-19 vaccine and booster. Doc. 321 at 10. Thus, mindful of the Circuit's guidance, the court finds that Ms. Middleton's incarceration during the pandemic is not an extraordinary and compelling reason to reduce her sentence.[3]

**B.   Sentencing Factors in § 3553(a)**

Even if Ms. Middleton had presented an extraordinary and compelling reason for a sentence reduction, her motion still fails at the third step of the § 3582(c)(1)(A) analysis. Before the court may reduce a defendant's term of imprisonment under § 3582(c)(1)(A), the court must consider whether a defendant poses a danger to the community and the relevant sentencing

---

[3] When the court ruled an earlier motion by Ms. Middleton, it concluded that her asthma presented an extraordinary and compelling circumstance during the COVID-19 pandemic. The court reached this conclusion mainly because the government conceded the issue. Doc. 289 at 7. But the government no longer concedes that Ms. Middleton's asthma qualifies as an extraordinary and compelling reason for compassionate release. *See* Doc. 321 at 10. And, more importantly, the recent guidance from our Circuit in *McRae* requires the court to reevaluate its earlier conclusion. *See* 2022 WL 803978, at *2.

factors under § 3553(a).[4]  18 U.S.C. § 3582(c)(1)(A).  If a proposed modified sentence strays too far from the original sentence, the § 3553(a) factors cannot support the sentence reduction, even where a defendant faces extraordinary and compelling circumstances.  *See United States v. Pope*, No. 16-10039-JTM, 2020 WL 5704270, at *1 (D. Kan. Sept. 24, 2020) ("This court has concluded that compassionate release based on COVID-19 related concerns should be denied where the resulting sentence would materially depart from an appropriate § 3553(a) sentence[.]"); *United States v. Kaufman*, No. 04-40141-1-JTM, 2020 WL 4196467, at *2 (D. Kan. July 21, 2020) ("Even when an older inmate faces some serious medical condition, compassionate release should be denied if it would radically alter the appropriate § 3553 sentence.").

Ms. Middleton committed a serious felony offense.  She pleaded guilty to conspiracy to commit kidnapping resulting in death, violating 18 U.S.C. § 1201(c), a Class A felony.  Doc. 178 at 6 (PSR ¶ 13).  Ms. Middleton did not object to any of the following facts, all taken from her PSR.  *Id.* at 34 (PSR ¶ 184).

On February 7, 2014, Ms. Middleton and others confined the victim—a prostitute identified as A.C.—in a car and removed her against her will from a hotel room in Junction City, then to Grandview Plaza, then to the Woody residence on the Fort Riley military base in Kansas, and then on to rural road where she was killed.  *Id.* at 5–9 (PSR ¶¶ 11, 21, 24, 25, 28, 32–34).  The group executed this plan because of a posting on social media.  *Id*. at 7 (PSR ¶ 22).  Based on the posting, Ms. Middleton believed her boyfriend—Larry Anderson, who was A.C.'s pimp—

---

[4]     Those factors include:  (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.  *See* 18 U.S.C. § 3553(a).

was having a sexual relationship with A.C. *Id.* To resolve this dispute, Mr. Anderson and Ms. Middleton conceived a plan: they would arrange a "ruse" prostitution encounter with A.C. so Ms. Middleton could "'fight out the problem'" with A.C. and Mr. Anderson could collect money that A.C. purportedly owed him. *Id.* (PSR ¶¶ 22–23). The couple enlisted help from several friends. *Id.* (PSR ¶ 22).

At the staged prostitution encounter, Ms. Middleton attacked A.C. and demanded she pay the money she owed to Mr. Anderson—about $300. *Id.* at 7–8 (PSR ¶¶ 24–25). A.C. first said she had money where she was staying, but after the group relocated to her hotel room, A.C. confessed she had no money. *Id.* at 8 (PSR ¶ 26). The group later moved again to a house at the Fort Riley military base, taking A.C. with them. *Id.* (PSR ¶ 28).

After an unsuccessful attempt to arrange another prostitution encounter for A.C. so she could earn funds Mr. Anderson and Ms. Middleton had demanded, the group eventually transported A.C. away from Fort Riley to a remote rural location in a neighboring county. *Id.* at 8–9 (PSR ¶¶ 28, 32–33). Near a bridge in this rural area, Ms. Middleton removed A.C. from the car and attacked her yet again. *Id.* at 9 (PSR ¶ 33). Ms. Middleton threatened A.C. with a knife and repeatedly tried to cut A.C.'s throat. *Id.* A.C. attempted to escape by running away and jumping off the bridge to escape the kidnappers. In this process, A.C., broke her ankle. *Id.* (PSR ¶ 34). But Mr. Anderson and Ms. Middleton continued pursuing her. *Id.* Under the bridge, Ms. Middleton unsuccessfully tried—again—to cut A.C.'s throat. *Id.* Ultimately, Mr. Anderson took the knife and inflicted the fatal blow to A.C. *Id.* She died at the scene. *Id.*

Ms. Middleton, Mr. Anderson, and the rest of the kidnappers returned to Ft. Riley where they hid identifying property and tried to destroy all evidence linking them to A.C.'s death. *Id.* at 10 (PSR ¶ 36). One member of the group lied to police about Mr. Anderson's whereabouts.

*Id.* (PSR ¶ 37).  Eventually, law enforcement executed search warrants and interviewed witnesses.  *Id.* (PSR ¶ 38).  Five days after A.C.'s death, law enforcement found her body—and the knife—where Ms. Middleton and Mr. Anderson had left them.  *Id.* (PSR ¶ 39).  In summary, Ms. Middleton committed a heinous, violent, and senseless felony offense.  She received a below guidelines sentence.  And still, her projected release date remains more than 15 years away.  *See* Marryssa Middleton (Reg. No. 25077-031)  https://www.bop.gov/inmateloc/ (last visited June 30, 2022).

Given these facts, the court finds that reducing the sentence as requested would not reflect the nature and seriousness of Ms. Middleton's offense.  She has served a small fraction of her sentence for her horrible crime.  Granting Ms. Middleton's motion would radically alter the appropriate sentence and no longer provide just punishment for her offense.  Nor would a reduced sentence adequately deter criminal conduct.

**IV.    Conclusion**

Before the court may grant relief under 18 U.S.C. § 3582(c)(1)(A), Ms. Middleton must satisfy three requirements:  (1) extraordinary and compelling reasons warrant a sentence reduction; (2) the reduction follows applicable policy statements by the Sentencing Commission; and (3) 18 U.S.C. § 3582(c)(1)(A)'s sentencing factors support the requested sentence modification.  *See Hald*, 8 F.4th at 937–38.  If any requirement is not satisfied, then relief is not warranted under § 3582(c)(1)(A).  *See id*. at 938 (noting that a district court may deny a motion for compassionate release if defendant fails to satisfy any one of the requirements).  Ms. Middleton has not established an extraordinary and compelling reason to warrant a sentence reduction, nor has she shown that § 3553(a)'s sentencing factors favor the significant reduction her motion seeks.  The court thus denies Ms. Middleton's motion (Doc. 319).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Ms. Middleton's Motion for Compassionate Release (Doc. 319) is denied.

**IT IS SO ORDERED.**

**Dated this 25th day of July, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree
United States District Judge**

10